Filed 8/7/23  P. v. Mendez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>FRANKY MENDEZ,<br><br>　　　Defendant and Appellant. | B323190<br><br>(Los Angeles County<br>Super. Ct. No. 2PB01479) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Jeffrey S. Cohen-Laurie, Judge.  Affirmed.

　　　Heather E. Shallenberger, under the appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Franky Mendez appeals from the order revoking and reinstating his post-release community supervision (community supervision). We conclude the evidence was sufficient to support the trial court's finding defendant willfully violated the terms of release, and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 2021, defendant was convicted by plea of felony domestic violence (Pen. Code, § 273.5, subd. (a)) and sentenced to the low term of two years in prison.[1]

On April 13, 2022, he was released from prison on community supervision, and transported by the Department of Corrections and Rehabilitation to the Pomona Valley area probation office. There, he met with Deputy Probation Officer (DPO) Noboa. Defendant was uncooperative and refused to complete the orientation process, claiming he was not under the jurisdiction of community supervision. He left the probation office.

That same day, DPO John Roque, from the Alhambra area office, filled out a "Desertion Report" setting forth the above events and recommending community supervision be revoked. The next day DPO Roque filed a petition for revocation. The court issued an arrest warrant.

Just over a week later, on April 22, 2022, DPO Roque filed a supplemental report. He set forth the following: On April 19, 2022, an LAPD officer attempted to conduct a traffic stop on a vehicle defendant was driving, which the officer determined had

---

[1] According to the pre-conviction probation report, in the course of an argument defendant beat up his then-pregnant girlfriend.

2

been stolen.  Defendant led the officer on a vehicle pursuit, crashed his vehicle, then fled into a resident's yard and hid.  He was ultimately located by a canine unit, and arrested for felony evading.  (Veh. Code, § 2800.2.)

The trial court recalled the arrest warrant and remanded defendant without bail, setting the community supervision revocation matter for an arraignment.  Although there were a number of continuances, defendant eventually denied the allegations, and waived a probable cause hearing.  The matter was ultimately set for hearing on the revocation petition on July 27, 2022.

On the day of the hearing, defendant filed a motion to exclude DPO Roque's testimony as to DPO Noboa's observations when defendant reported and was allegedly uncooperative.  He argued, "Deputy Noboa is the percipient witness and report author who could best testify to the allegations.  Testimony by any officer other than Deputy Nob[o]a would be cursory and would deny [defendant] the opportunity to impeach or refute the evidence."  He went on to argue that it would be "easy" for the prosecution to bring Deputy Noboa to court, and suggested the right to confrontation meant "the court must compel the appearance of the declarant."

At the hearing, defense counsel argued the motion, and again suggested that DPO Noboa "should be cross-examined to satisfy due process and, you know, this is just a regular probation officer who could have been easily subpoenaed to court today."  The prosecutor responded that DPO Roque should be permitted to testify to what he read in DPO Noboa's report, but, in any event, "[I]f counsel would like me to subpoena the DPO that was present, I have no problem with that, but . . . I received the

motion today, so I have not had the opportunity to even consider that." When defense counsel continued to argue the inadmissibility of DPO Roque's testimony, the court asked, "in the interest of efficiency" if it just "make[s] sense to set this for a date when we can have [DPO Noboa] here." Defense counsel responded, "I guess we would object." On the basis that it was the "last day," counsel declined to stipulate to a further continuance, and the prosecutor chose to proceed with DPO Noboa.[2]

The hearing went forward. DPO Roque was the only witness. He testified that a report to the probation office is not considered a "full reporting" unless the individual receives the instructions, rules and regulations of probation. The individual also must obtain his or her next reporting date in order for a report to be considered complete. Anything short of that is a failure to report. DPO Roque testified to DPO Noboa's report of her encounter with defendant when he first appeared at the probation office on April 13. Defendant was uncooperative and argumentative. He refused to sign the necessary paperwork.[3]

---

[2]     There is no precise number of days within which a hearing to revoke community supervision must be held; the statute requires it be held only within a "reasonable time." (Pen. Code, § 3455, subd. (c).)

[3]     In cross-examination, DPO Roque admitted that, at one point, DPO Noboa's report indicates that defendant stated he would sign anything presented. This appears to have been a typographical error in DPO Noboa's report. DPO Roque read from DPO Noboa's report that defendant, "stated he would sign any documents presented or would not remain seated for the completion of assessment." DPO Roque went on to say that, earlier in the report, it says, "He refused to sign any forms and

4

DPO Roque independently confirmed this with probation records. For example, had defendant completed the initial report, DPO Noboa would have made entries in the system related to an assessment of his "criminogenic need," but no such entries were present. Nor was defendant given a date to next report. ~(RT 32)~

Defendant did not offer any evidence in his defense, but his counsel's cross-examination of DPO Roque attempted to elicit testimony that defendant had experienced some sort of mental health issue that rendered his failure to report not willful. DPO Roque agreed that DPO Noboa at one point indicated that defendant "appeared mentally unstable." He also agreed that defendant had been transported to the probation office directly from prison, and that this "usually," but not always, indicates that "there is a mental health issue."[4]

Defense counsel argued that, even considering the hearsay evidence, the prosecution failed to meet its burden. Counsel suggested that defendant had a "mental health breakdown," but the Probation Department did not have sufficient mental health personnel to assist him with intake. The trial court concluded the prosecution had met its burden of establishing, by a preponderance of the evidence, that defendant failed to report.

---

repeatedly interrupted any attempts to explain any answer why he was at the Pomona Office." Defendant did not sign any document at his meeting with DPO Noboa.

[4] On redirect, the prosecutor elicited DPO Roque's testimony that defendant "does not have an X85 mental health condition," but the term was not explained.

The court specifically added, "The defense raised the possibility of a mental health breakdown, but I don't have evidence of that."

The court revoked and reinstated community supervision, with 180 days in jail, with credit for 90 actual days and 90 good time credits. Upon release, defendant was ordered to report to the Pomona Valley area probation office.[5]

Defendant filed a timely notice of appeal.

## *DISCUSSION*

On appeal, defendant does not directly challenge that he failed to report. Instead, he argues the evidence was insufficient to support the court's implied finding that defendant's failure to report was willful.[6]

### 1.   *Standard of Review*

The parties agree that the standards regarding probation violations apply to community supervision violations. "The

---

[5]   At this point, defendant exclaimed, "To probation? I finished my time." The court confirmed he was ordered to report. Defendant stated, "I'm not going to report over there. You hear what I'm saying? That's what the fuck I'm saying." The court warned defendant to stop talking or he would be removed from the courtroom. Defendant exclaimed, "I don't give a fuck about Pomona" and was ordered removed.

[6]   Appellant's Reply Brief states: "Because Officer Noboa's notes convey what she witnessed and heard that day, only she could testify on the issue of whether appellant's failure to complete the reporting process was willful. Thus, even though Officer [Roque] could testify that probation's computer system verified Officer Noboa's notes that appellant failed to complete the reporting process, this alone does not establish that appellant willfully violated [community supervision]."

burden of proof at a probation violation hearing is by a preponderance of the evidence." (*People v. Abrams* (2008) 158 Cal.App.4th 396, 400.) However, the evidence "must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 982.) It constitutes an abuse of discretion to revoke a defendant's probation for something caused by circumstances beyond his control. (*Id.* at p. 983 [defendant could not report because he was deported to Mexico immediately upon release from jail].)

## 2. *The Evidence is Sufficient*

Here, the record shows that, upon his initial release from custody, defendant was transported to the Pomona probation office, but he did not complete his assessment. Defendant acknowledges that admissible evidence supports this conclusion, but argues the evidence is insufficient to establish that his failure to complete the assessment was willful under *People v. Galvan, supra*, rather than the product of a mental health issue. He supports this position with two arguments. First, he suggests that DPO Roque was "unable to explain with certainty the conduct witnessed" by DPO Noboa, and that, standing alone, DPO Roque's testimony was "an improper substitute for Officer Noboa['s] live testimony regarding her notes detailing appellant's behavior . . . ."[7] Second, he argues that, to some extent, DPO

---

[7] Defendant's opening brief ends with the further argument that "had Officer Noboa been available for cross-examination, this would have added to the truth-furthering process because the defense could have elicited testimony that any failure on appellant's part to cooperate was more likely due to a mental health issue, as Officer Noboa surmised, and not willful conduct."

Noboa's notes – and DPO Roque's testimony from them – constituted inadmissible hearsay and should have been excluded. (See *People v. Abrams, supra,* 158 Cal.App.4th at page 405 [hearsay regarding routine matters such as making and keeping of probation appointments is admissible in revocation hearings, while statements made to a probation officer by victims or witnesses may be too testimonial to be admissible without running afoul of due process protections].)

We need not consider the hearsay argument. The concededly admissible evidence demonstrates defendant was transported to the probation office, commenced his meeting with DPO Noboa, and left before fully reporting. He never returned to the office, nor contacted the office to complete his initial report. That is sufficient to support the trial court's conclusion that defendant's failure to report was willful. Defendant relies on DPO Noboa's observation that, in addition to being uncooperative, defendant appeared mentally unstable. That observation alone is insufficient to establish that defendant's conduct was not willful or undermine the trial court's factually supported conclusion that defendant's lack of cooperation was volitional.

---

To the extent defendant now suggests DPO Noboa's testimony would have been helpful to him, we observe that the prosecutor offered to subpoena DPO Noboa and the court offered to continue the hearing for that purpose, but defendant objected. In any event, defendant's argument as to what DPO Noboa would have added to her report is speculative.

## *DISPOSITION*

The order revoking and reinstating community supervision is affirmed.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

KIM, J.